UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THADDEUS TOOMER,

        Plaintiff,

vs.                                  CASE NO. 3:03-cv-886-J-99MCR

MULTIMEDIA HOLDINGS
CORPORATION, etc.,

        Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment (Dkt. 11) and Plaintiff's Opposition thereto. Upon consideration of same and having been fully advised of the record herein, the Court finds as follows:

## BACKGROUND

Plaintiff was hired by Defendant in November of 1992 as a reporter. Prior to his termination, in March of 2002, Plaintiff was demoted from Chief Investigative Reporter to General Assignment Reporter and his pay was cut approximately 25%. Plaintiff finally was terminated in February of 2003. At the time, Plaintiff was 49 years of age. Plaintiff brings this lawsuit, alleging that Defendant violated the Age Discrimination in Employment Act (ADEA), as amended, 29 U.S.C. § 621 *et seq.*, and the Florida Civil Rights Act (FCRA) because he was replaced by a younger, less experienced reporter approximately three months after his demotion. Defendant contends that Plaintiff was demoted and eventually terminated because of poor performance.

## **STANDARD**

Summary judgment shall be granted for the moving party only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A court looks to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," *id.*, in determining whether summary judgment is appropriate. The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hairston v. Gainesville Sun Publ. Co.*, 9 F.3d 913, 918 (11th Cir. 1993); *Warrior Tomigbee Transp. Co. v. M/V/ Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324; *Howard v. BP Oil Company, Inc.*, 32 F.3d 520, 524 (11th Cir. 1994).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather [it is to] determine whether such issues exist to be tried . . . " and "[t]he court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d at 919 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried. *Hairston*, 9 F.3d at 921; *Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559 (11th Cir. 1987). All the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the nonmovant. *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

The Eleventh Circuit has commented that summary judgments for Defendant are not rare

in employment discrimination cases. *Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Indeed, where the evidence supporting a plaintiff's allegation of discrimination is merely "colorable," or is "not significantly probative," summary judgment may be granted. *Id.* at 1080. Conclusory, self serving, or uncorroborated allegations in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment or directed verdict. *Earley*, 907 F.2d at 1081. Further, a plaintiff cannot rely on suspicion or conjecture to prove that discrimination motivated an adverse employment action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50; *Walker v. Nationsbank of Florida N.A.*, 53 F.3d 1548, 1558 (11th Cir. 1995).

## ANALYSIS

Under the ADEA, Plaintiff must show a *prima facie* case of age discrimination, either by direct evidence, indirect evidence, or statistical proof.[1] *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). Plaintiff has not offered any statistical proof. Plaintiff also does not appear to proffer any direct evidence of discrimination. Direct evidence of discrimination is evidence which, if believed, "would prove the existence of a fact without inference or presumption." *Id.* at 581-82.

*McDonnell Douglas* provides the framework for proving intentional discrimination through circumstantial evidence. *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). In order to establish a circumstantial *prima facie* case of age discrimination, a plaintiff must prove: 1) he was a member of a protected class; 2) he was qualified for his position; 3) he suffered an

---

[1] The same analysis used under the ADEA applies to the FCRA. *Brand v. Florida Power Corp.*, 633 So.2d 504, 507 (Fla. 1st D.C.A. 1994).

3

adverse employment action; and, 4) his employer treated him less favorably than similar employees outside of the protected class. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11 Cir. 1999). If the plaintiff meets this burden, there is a presumption that intentional discrimination occurred. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 n.7 (1981); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997). Thereafter, the presumption raised by the plaintiff's *prima facie* case may be rebutted by the employer's articulation of a legitimate, non-discriminatory reason for its adverse employment action. *Burdine*, 450 U.S. at 253. Although the employer's burden at this stage is one of production, and not persuasion, the burden cannot be met by mere formality. *Walker v. Mortham*, 158 F.3d 1177, 1184 (11th Cir. 1998). Instead, "[t]he defendant must clearly set forth, through the introduction of admissible evidence," the reason for its adverse action, and that reason "must be legally sufficient to justify a judgment for the defendant." *Burdine*, 450 U.S. at 255. If the employer carries its burden by producing evidence of a legitimate, non-discriminatory reason for its action, the presumption of discrimination raised by the plaintiff's *prima facie* case falls away, leaving the plaintiff with the burden of persuading the fact finder that the employer's articulated reasons are a pretext for discrimination. *Id.*; *Combs*, 106 F.3d at 1528 (internal citations omitted).

Of course, the first issue is whether Plaintiff successfully makes out a *prima facie* case. Plaintiff has carried his burden with respect to the first element of his *prima facie* case under *McDonnell Douglas;* Plaintiff was forty eight or forty-nine at the time of the adverse employment actions.[2] Thus, the threshold issue is whether Plaintiff was replaced by a worker

---

[2] Defendant does dispute that Plaintiff was qualified for his position. The Court need not reach this issue; Defendant's evidence regarding this point will be discussed in the section dealing with Defendant's reasons for terminating Plaintiff.

outside the protected class and, further, whether he was treated less favorably than that worker. Although Plaintiff's "replacement" was clearly outside the protected class, Plaintiff's evidence regarding whether that worker actually replaced him is vague at best. Assuming that Plaintiff was in fact replaced by the younger reporter, Ms. Sadeghian, there is no evidence that she was treated more favorably than Plaintiff.

Indeed, Ms. Sadeghian served in Plaintiff's former position for less than eight months. During that time she received a very negative performance evaluation by the same supervisor that demoted and later terminated Plaintiff[3] and was moved to general assignment reporting on weekends. She eventually left the station for another career. Thus, even if Ms. Sadeghian did replace Plaintiff, she was not treated more favorably than him. This Court finds that Plaintiff has failed to establish a prima facie case of age discrimination.

Even if Plaintiff had established a prima facie case of age discrimination, Defendant has offered legitimate nondiscriminatory reasons for his demotion and termination. Further, Plaintiff has offered insufficient evidence from which a reasonable jury could infer that Defendant's articulated reasons for demoting and terminating him were pretextual.

Defendant has proffered several nondiscriminatory reasons for choosing to demote and then terminate Plaintiff. Defendant maintains that: (1) Plaintiff generally had a poor attitude and treated his superiors with disrespect; (2) Plaintiff exhibited bias towards city officials; (3) Plaintiff was caustic and even sometimes volatile towards fellow staff members; (4) Plaintiff was regularly late to editorial board meetings; and, (5) Plaintiff was not meeting goals regarding the

---

[3] Ms. Sadeghian also complained about Mr. McCormick's treatment of her. Sadeghian Depo. at 86-88 and 100.

5

number of stories produced.[4]

Regarding Plaintiff's performance and value as a worker, the Court notes that Plaintiff had three different immediate supervisors during his employment with Defendant. These supervisors filled out lengthy annual performance evaluations. Plaintiff's first supervisor was Kevin Brennan, who evaluated Plaintiff until 1996. The 1997 and 1998 evaluation was filled out by the second supervisor, Bart Swenson. The evaluations from 1999-2003 were completed by John McCormick. Defendant argues, and this Court generally agrees, that while all three supervisors did make positive comments about Plaintiff, the evaluations demonstrate that the supervisors all noted similar problems with him and that the problems generally grew over time. Specifically, Defendant maintains that all three supervisors noted attitude problems and production/performance problems with Plaintiff.[5]

In the 1993 evaluation, Mr. Brennan noted that Plaintiff was negative out in the newsroom. In the 1998 evaluation, Mr. Swenson notes that Plaintiff "battles" over some

---

[4] Plaintiff's employment file also contains allegations that Plaintiff changed the wording of a story after management had approved it, took a photographer out of the county on an assignment that had not been cleared with management, had excessive cell phone bills, "staged" what basically amounted to a re-enactment of an event that had transpired before Plaintiff arrived at the scene, as well as other behavior not related to his work. The Court need not discuss these allegations because it finds the other evidence submitted is sufficient to grant summary judgment in favor of Defendant.

[5] Plaintiff makes much of the fact that although the evaluations contained negative comments regarding his performance and attitude, he was "consistently" given "superior" evaluations until recently. A review of the evaluation forms, however, demonstrates that Plaintiff's job performance rating varied. The least desirable rating is "change needed" followed by "transitional," then "commendable," "superior," and "exceptional." The 1998 evaluation, for example, gave Plaintiff a "transitional rating" with a "declining" performance trend rating. As noted, this evaluation was filled out by Mr. Swenson, a superior that did not issue any adverse employment decisions against Plaintiff.

assignments with the producers and/or editors, is "not breaking stories often," and "as a high impact player, he has virtually disappeared." Mr. Swenson also checked the box that designated Plaintiff's performance as "declining." The 2001 evaluation done by Mr. McCormick noted argumentative behavior in editorial meetings, a deficiency in the number of "turnable" stories, and abusive behavior towards co-workers including an incident of shouting profanities in the news room. After the 2001 evaluation, Defendant decided to reevaluate Plaintiff in six months rather than execute another contact with him.

In July of 2001, another evaluation was completed and Plaintiff was told he would not receive a raise or letter of agreement regarding continued employment. Finally, on February 15, 2002, he was reassigned as a General Assignment Reporter when he failed to "break" a sufficient number of stories. According to Defendant, Plaintiff's performance did not improve and on February 27, 2003, Defendant told Plaintiff that it would not renew his contract.

Plaintiff has produced little, if any, credible evidence regarding pretext. In Plaintiff's deposition he stated that "they wanted someone ... who they could pay less" but provided no evidence of this. Plaintiff further testified that Mr. McCormick complained his approach to the news was "old style." Plaintiff's Depo. at 84, 120, 122. Plaintiff next proffers the testimony of Kim Romano, an assignment manager, who testified that Plaintiff never refused to do a story. Romano Depo. at 19. Plaintiff notes that Ms. Sadeghian did not recall Plaintiff being disrespectful or unreasonable. Sadeghian Depo. at 92. However, this testimony, taken together, does not come close to sufficient evidence of pretext.[6]

---

[6] Plaintiff also disputes specific allegations made regarding his investigative stories. The Court need not discuss Plaintiff's rebuttal on this point because it finds that Defendant has proffered sufficient evidence of performance related problems not related to Plaintiff's stories

7

Additionally, Plaintiff attempts to show Defendant's alleged bias regarding other employees in the protected class. Plaintiff argues that he was one of three reporters in their mid to late forties and the other two reporters did not have renewal contracts offered to them on a timely basis. While this allegation, if true, could bolster Plaintiff's age discrimination claims, he fails to provide any evidence regarding this point.[7]

Next, Plaintiff proffers the affidavit of Lisa Scribellito Milligan.[8] Ms. Milligan was Mr. McCormick's Administrative Assistant. The affidavit maintains that Mr. McCormick said "it would be cheaper to replace you (Ms. Milligan) with someone younger and with less experience." If true, this statement, without more, is irrelevant to Plaintiff's claims because Ms. Milligan did not face any adverse employment action. The affidavit also states that Mr. McCormick had "a tendency to use disparate treatment when it came to older, higher salaried employees." This blanket allegation is not sufficient to support a request to re-open discovery to depose Ms. Milligan; Plaintiff has produced no evidence whatsoever of any other workers, or even the name of a single worker, subjected to age discrimination.

---

that demonstrate Defendant's legitimate, nondiscriminatory termination decision.

[7] In Plaintiff's opposition to Defendant's Motion for Summary Judgment, he argues that he was one of three reporters in their forties. He states that the other two reporters, Mr. Weeder and Mr. Arragon had to wait before they were offered new employment agreements. Even if this were an adverse employment action, Plaintiff fails to offer any evidence that this practice differed regarding younger reporters. In addition, Mr. McCormick testified regarding legitimate nondiscriminatory reasons for the time lag between the other two reporters' contracts. Mr. McCormick also testified that another presumably younger reporter, Mr. Amaro, also went a period of time without a new contract. McCormick Depo. at 101-104.

[8] Defendant has filed a motion to strike the affidavit. Because the Court finds that the allegations contained in the affidavit are insufficient to defeat summary judgment, it need not decide whether the Motion to Strike should be granted.

The other statements Ms. Mulligan makes in her affidavit regarding Mr. McCormick's treatment of Plaintiff do not demonstrate age discrimination. While Plaintiff generally concedes this point, he argues that the statements do cast doubt on Mr. McCormick's assertion that Plaintiff was terminated for poor job performance. Again, these types of allegations, without more, are insufficient to demonstrate that Defendant's reasons for its adverse employment actions towards Plaintiff were pretextual. Taken as a whole, the evidence cited by Plaintiff to bolster his claims is insufficient. As noted, all three of Plaintiff's supervisors noted similar problems with Plaintiff over more than a decade; Plaintiff has failed to sufficiently rebut that evidence. In sum, there is insufficient evidence of discrimination or pretext to defeat summary judgment.

## CONCLUSION

In consideration of the foregoing, it is **ORDERED**:

Defendant's Motion for Summary Judgment (Dkt. 11) is **GRANTED.** The clerk is directed to enter judgment for Defendant and close this case. All pending motions are **MOOT.**

**DONE AND ORDERED** in Chambers this 21ST day of April, 2005.

HENRY LEE ADAMS, JR.
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record
Courtroom Deputy